UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES K. ARINGTON d/b/a K&D AUTOMOTIVE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE COUNTY OF DEKALB, INDIANA, et al., )<br>)<br>Defendants. ) | CAUSE NO. 1:04-CV-171 |

## OPINION AND ORDER

### I. INTRODUCTION

James K. Arington is an auto mechanic who lives in a rural area of DeKalb County, Indiana. In 1998, Arington decided he wanted to operate a transmission-repair business on his property, and after securing a special zoning exception and a building permit from the County, he erected a building and began doing so.

Arington's case, which he brings *pro se*, centers on the building he subsequently erected on his property, a structure he now contends is unfit for his business use. After first suing his general contractor, Arington presently sets his sights on the local governmental authorities that issued him a building permit for the structure back in 1998.

While Arington alleges a host of claims, his pivotal allegation is that the defendants denied him equal protection of the law in violation of the Fourteenth Amendment. On the facts Arington marshals, the claim is most unusual. Normally when a plaintiff brings an equal-protection claim, it is because the government has taken some negative action against him;

however Arington's legal theory is different: he claims that the County violated his constitutional rights by *giving* him the very building permit *he requested.*

The short version of the story, at least the one Arington tells, is that he should have obtained a "commercial" building permit, because that would have required him to meet the rigorous building codes and inspections required by the state government for any building that is to be open to the public.  But the County[1] intentionally misled him, Arington says, into requesting only an "accessory" building permit, meaning that his building was subjected to only County inspection and regulation, not the more rigorous state codes and inspections that come with a building the owner intends for public use or occupancy, a so-called Class 1 structure.[2]  As a result, he secured an accessory permit, constructed his building, and began running his business, only to discover years later that the building does not meet state requirements and thus he is prohibited by state law from running his business in it.

So, Arington sued the County under 42 U.S.C. § 1983 utilizing a number of theories, but after some preliminary motion practice his case boils down to the following claims: (1) an alleged violation of the Equal Protection Clause of the Fourteenth Amendment; (2) a conspiracy by the defendants to deny Arington his civil rights under 42 U.S.C. §§ 1985 and 1986; and (3) an alleged denial of substantive due process under the Fourteenth Amendment.  (*See* Docket # 60.) The County has now moved for summary judgment on what remains of the case (Docket # 97), and although Arington's theories are creative, in the final analysis his evidence is insufficient to

---

[1] This opinion generally uses "the County" to refer to all defendants, except in places where it is necessary to discuss individual defendants.

[2] For their part, the County generally maintains that Arington neglected to inform them of the intended public use of the structure. Of course, if this contention is correct, that would likely be the end of Arington's case, but as noted *infra*, we must accept his version of the facts.

show a violation of his constitutional rights.  Accordingly, the motion for summary judgment will be GRANTED.[3]

## II. FACTS[4]

In 1998, when Arington first decided to open a transmission business, his property was zoned "rural residential," which would have prohibited him from establishing any business on it. (Aff. of Sally Rowe ¶ 6.)  Arington thus petitioned the DeKalb County Board of Zoning Appeals for a "Home Enterprise" special zoning exception (Dep. of James Arington at 11), which the Board granted, subject to several immaterial conditions (Rowe Aff. ¶ 8, Ex. A-2).

Arington then completed an application for a building permit, specifying that it was for an accessory building.  (Aff. of Carlos Whitaker, Ex. 2.)  According to Arington, Defendant Brad Stump, then the County's Building Commissioner (Aff. of Brad Stump ¶ 5), instructed him to apply for this accessory building permit (*see* Pl.'s Reply to Def.'s Mot. for Summ. J. at 1). Stump had been present at Arington's hearing before the Board of Zoning Appeals, and thus knew that Arington intended to run a transmission business in the planned building.  (Arington Dep. at 13.)  The permit was eventually issued (Whitaker Aff. ¶ 8, Ex. 2), and Arington hired contractor Gary Myers to construct the building (Dep. of Gary Myers at 1).

After the building was completed, Defendant Bill Walters, a County Building Inspector, inspected it and certified that it was in compliance with County regulations for an accessory building.  (Whitaker Aff. ¶ 9, Ex. 4.)  Accordingly, Stump issued a Certificate of Occupancy to

---

[3]Subject matter jurisdiction arises under 28 U.S.C. § 1331.   Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[4]For summary judgment purposes, the facts are recited in the light most favorable to Arington, the nonmoving party.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Arington on November 17, 1998.  (Stump Aff. ¶ 5, Ex. 1.)

The next few years apparently passed without incident.  Then, sometime around 2002 (the record is not clear precisely when), Arington came to believe that he should have applied for a commercial building permit, with the more rigorous state standards and inspections that such a permit entails.  This was likely about the same time he discovered that his building had sustained structural damage, ostensibly because it was constructed under substandard building codes.  Upon making these discoveries, Arington brought suit in state court against his contractor, Myers, a case that has since been settled.  (Arington Dep. at 8.)

Also in 2002, Arington had several skirmishes with County officials about whether he was in compliance with the conditions of his special zoning exception.  For reasons explained later, the details of these disputes are irrelevant.  However, one revealing incident did occur during that time: Carlos Whitaker, a County building inspector, told Arington and his building contractor that the Building Department's "policy [is] to review commercial projects of under 3000 square feet [such as Arington's] locally, instead of requiring that they be sent for State review."  (*See* Aff. of Kenneth Nord.)  In other words, Arington was treated the same way as everyone else constructing a building under 3,000 square feet.

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder."  *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record,

whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

As noted previously, Arington believes that the County, by misleading him into applying for the wrong permit and then granting him that permit, denied him equal protection of the laws in violation of the Fourteenth Amendment.  For the reasons given below, that claim fails as a matter of law.  Arington also asserts conspiracy claims under 42 U.S.C. §§ 1985 and 1986, as well as a substantive due process claim under the Fourteenth Amendment, but these claims are derivative of his equal-protection claim and thus also fail.

### A. Arington Fails to Show a Denial of Equal Protection

In a nutshell, Arington believes that the County violated his constitutional rights due to its "inappropriate application of codes back at the time that [he] received [his] building permit." (Arington Dep. at 9.)  A full understanding of Arington's theory requires some background in Indiana and DeKalb County law.

Each unit of Indiana local government, including counties, Ind. Code § 36-1-2-23, must

5

require its citizens to comply with Indiana's "code of building laws." *Id.* § 36-7-2-9. That code classifies any "building or structure that is intended to be or is occupied or otherwise used in any part by . . . [t]he public" as a "Class 1 structure." 675 Ind. Admin. Code 12-6-2(b)(1)(A)(I). By statute, all Class 1 structures require a "design release" before they can be built. Ind. Code § 22-15-3-1. There are many hoops to jump through before an applicant can secure a design release, *see id.* § 22-15-3-2, one such applicant describing it as a "huge hassle" (Dep. of Tom Erwin ¶ 4).

The County, by ordinance, has explicitly adopted all of Indiana's building codes, rules, and standards. DeKalb County Code § 32-3-1-6.[5] A related ordinance states that an appropriate building permit is required for all new construction, and that "[i]n those instances where a Design Release is required by [state law,] the building inspector shall issue no permit until the Design Release is issued." *Id.* § 32-3-1-3(F).

This brings us back to what appears to be Arington's fundamental contention: a building that houses a transmission business necessarily implies that the owner intends it to be "used . . . by . . . [t]he public" and thus qualifies as a Class 1 structure, requiring a state design release under Indiana law.[6] As Arington sees it, the County either knew the intended public use, or should have intuitively grasped it, yet misled him into applying for an accessory building permit, thereby ensuring that the design-release process was never triggered. According to Arington,

---

[5]Arington's filings repeatedly quote the county code, but neither he nor the County introduced it into the record. Nonetheless, the County does not dispute the accuracy of Arington's quotations, and thus the Court hereby takes judicial notice of the code as recited by Arington. Fed. R. Evid. 201; *see also Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002).

[6]Interestingly, the State Building Commissioner conducted an on-site inspection of Arington's building on March 13, 2003, and determined that because there were no employees that used the structure, and because the public was not normally allowed in the building, it did not meet the definition of a Class 1 structure. (*See* Pl.'s Supplemental Br. on Def.'s Mot. for Summ. J., Attach. A.) Arington apparently wrote the state to disagree with that conclusion. *Id.*

6

had he been told to apply for a commercial building permit rather than an accessory building permit, the County would have shepherded him through the design-release process with the state and he would have a building legally suitable for his purposes and free of structural defects.

The Court previously decided, and Arington has since agreed, that the only type of equal-protection claim available to him is the "class of one" claim authorized in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). (Docket # 60; Pl.'s Reply at 3.) To make out such a claim, Arington must show that the County (1) intentionally treated him differently from others similarly situated; and (2) had no rational basis for doing so. *Tuffensdam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004). Arington fails on the first element.

Arington offers Tom Erwin (sometimes spelled by Arington as "Irwin") as the only specific example of a similarly-situated individual treated differently than him. Erwin sought to build an automotive sales and service business in DeKalb County, and like Arington, first needed to secure a building permit. To this degree it could be argued that Arington and Erwin are similarly situated.[7] Moreover, unlike Arington, the County steered Erwin towards a commercial permit, meaning that Erwin had to go through the laborious and more expensive state design-release process before the County would issue him a building permit; therefore, Arington has shown that he and Erwin received differential treatment. (Erwin Dep. ¶ 16.) Indeed, after much red tape, Erwin ultimately secured both the design release and County building permit, and eventually constructed his building. (*See id.* ¶ 5.)

Nonetheless, Arington still fails on the first element of his claim because he fails to show

---

[7]The County points out that, unlike Arington, Erwin did not need a special zoning exception because his property was already zoned "commercial." The distinction seems immaterial, however, as Arington's claim centers on how he was treated during the building-permit process, not the zoning process.

7

that he was *intentionally* treated differently than Erwin.  The Seventh Circuit recently clarified that "intentional" in this context means not just "intentional" in the sense that the County knew it was treating Arington differently, but "intentional" in the sense of "wanting [Arington] to be made worse off than . . . others."  *Tuffensdam*, 385 F.3d at 1127.  In other words, the claimed differential treatment must have been a product of the County's "personal hostility toward him." *Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir. 2005); *Albiero v City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (the plaintiff must demonstrate that the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant).  Indeed, even at this late date Arington does not suggest anything approaching "personal hostility," or even that the County wanted to make him worse off than others, admitting finally that "[t]here is no explanation for Defendant's usurpment of state authorities . . . ." (*See* Pl.'s Supplemental Br. at 19.)  As a consequence, Arington has presented no evidence that the County or any of its officials had any personal hostility toward him, let alone that their conduct was driven by such animus.

   Moreover, the evidence and arguments presented by Arington actually *contradict* the idea that the County "want[ed him] to be made worse off than . . . others." *Tuffensdam*, 385 F.3d at 1127.  Arington, citing a statement attributed to building inspector Carlos Whitaker, contends that the County had a practice of "internally handl[ing] any building less than 3,000 [square feet] without going through [the] State Plan & Release process."  (Pl.'s Reply at 5.)  If that contention is true (and at this stage the Court must assume it is), it indicates that the County may have had a practice of skirting state law requirements, or as Arington sees it, a practice of usurping state authority; however, rather than supporting Arington's theory, it actually works instead to

8

disprove what he needs to show: that the County had it in for him personally.  Stated another way, the County treated *everyone* who sought to erect a commercial building under 3,000 square feet just like they treated Arington.

The record does not reveal why the County had such a policy.  The state design-release process is said to be arduous for both the applicant and County workers, so perhaps the County ducked the process for smaller buildings in order to devote its resources elsewhere, or perhaps it did not want to discourage small business owners from opening needed establishments.  In the final analysis, however, Arington has failed to show, or even present evidence that would allow a jury to infer, that the policy was concocted to make him worse off than others who were similarly situated, meaning that his equal-protection claim fails as a matter of law.

*B. Arington's Remaining Claims Also Fail*

Arington also alleges that the individual defendants violated 42 U.S.C. § 1985, which imposes liability on those who conspire to deprive others of equal protection of the laws, and 42 U.S.C. § 1986, which imposes liability on anyone who has knowledge of a § 1985 conspiracy, has the power to prevent its implementation, and neglects to do so.  He cites several incidents that occurred in 2002 (well after he put up his building) that he claims are evidence that County officials conspired to cover up the alleged violation of his rights.  For instance, one of the defendants threatened to revoke his special zoning exception unless he agreed to "rescind[] a lawfully filed and constitutional 'Notice of No Trespass' document," and Arington also suspects that County officials encouraged the state fire marshal to inspect his building in order to "coerce and intimidate" him.  (Pl.'s Reply at 5.)  But it does not matter whether these events occurred as Arington retells them.  An essential element of both § 1985 and § 1986 is that the defendants

9

must have acted with the purpose of depriving Arington of equal protection of the law.  *E.g.,* *Brokaw v. Mercer County*, 235 F.3d 1000, 1023-24 (7th Cir. 2000).  As explained *supra*, Arington fails to show that any defendant had "personal hostility toward him," a necessary element of an equal-protection claim.  *Crowley*, 400 F.3d at 972.  Thus, even if these events occurred, they could not be the basis for liability under §§ 1985 and 1986.  The individual defendants are thus entitled to summary judgment on these claims.[8]

Finally, Arington alleges that the County's actions deprived him of the due process of law guaranteed by the Fourteenth Amendment.  To make out this claim, he must show that the County (1) arbitrarily and irrationally deprived him of a property interest; and (2) committed a separate constitutional violation or that state-law remedies are inadequate.  *E.g., Draghi v. County of Cook*, 184 F.3d 689, 694 (7th Cir. 1999).  Arington's claim flounders on at least the first element.  Even assuming that Arington has some sort of property interest at stake (which is highly dubious, as Arington provides no authority on the point), the County's treatment of him was not arbitrary–according to Whitaker it treated everyone seeking to erect a building under 3,000 square feet the same way it treated him. (*See* Nord Aff.)  Nor were the County's actions irrational–there are many understandable reasons it may have acted as it did, such as the rational (though hardly admirable) reason that it was too much work to do it the other way.  Accordingly, Arington's due-process claim fails as a matter of law.

---

[8]Arington's brief recites these particular events only as evidence of a conspiracy; the Court does not read his brief to allege that they were independent deprivations of equal protection. (*See* Pl.'s Reply at 5.)  However, even if Arington did allege separate constitutional violations based on these events, those claims would fail because he has not pointed to any similarly-situated person who was treated differently.  *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004) (holding that "a meaningful application of the 'similarly situated' requirement" is necessary to avoid "transform[ing] every claim for improper provision of municipal services or for improper conduct of an investigation . . . into a federal case").

## V. CONCLUSION

Navigating the maze of governmental regulations surrounding zoning and building permits can be daunting to the average citizen even under ordinary circumstances. If Arington's story is true, he came out on the wrong side of the maze, directed there by some local authorities who while perhaps well-meaning, sent him down the wrong administrative path (and ignored state law to boot). But just because Arington allegedly received poor service and advice from some local government officials, does not mean that his predicament gives rise to a Constitutional violation.

Arington repeats many times throughout his briefs that the County "disregarded" its "duty" to follow state law and cannot "justify its actions." The burden of proof, however, is not on the County to show that it acted properly at all relevant times; Arington is the one seeking money damages from the County for violations of the Constitution, and thus the burden of proof is on *him* to show that the Constitution was in fact violated. That burden requires Arington to show that his alleged mistreatment at the hands of the County was motivated by personal hostility, and he has failed to do so.

For the reasons given herein, Defendants' motion for summary judgment (Docket # 97) is GRANTED.[9] The Clerk is ORDERED to enter judgment in favor of Defendants and against Plaintiff. Defendants also filed three related motions to strike (Docket # 119, 125, 135), but as they are entitled to summary judgment even if the contested evidence is allowed, and Arington's arguments considered, the motions are moot and thus DENIED.

---

[9] Defendants present several other defenses to Arington's claims, including the statute of limitations, qualified immunity, and the intra-corporate conspiracy doctrine. However, given the Court's analysis in Section IV *supra*, there is no need to comment on the merits of these arguments.

  To the extent Arington has asserted any state law claims, they are DISMISSED without prejudice to possible later refiling in a state court of competent jurisdiction. 28 U.S.C. §1367(c)(3).

Enter for this 19th day of September, 2005.

                /S/ Roger B. Cosbey
                Roger B. Cosbey,
                United States Magistrate Judge